UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:20-CV-072-TBR

KEITH MICK,                                                      PLAINTIFF

v.

FOUR RIVERS NUCLEAR                                     DEFENDANT
PARTNERSHIP, LLC,

## MEMORANDUM OPINION & ORDER

This matter is before the Court on the Motion for Summary Judgment, [DN 11], filed by Defendant Four Rivers Nuclear Partnership, LLC ("Four Rivers"). Plaintiff Keith Mick has filed a response, [DN 15], and Four Rivers filed a reply, [DN 32]. This matter is therefore fully briefed and ripe for review. For the reasons set forth below, the Court will grant Four Rivers' Motion for Summary Judgment, [DN 11].

I.      BACKGROUND

A.  Plaintiff's Work History

Until 2014, the United States Enrichment Corporation ("USEC") oversaw operations of the Paducah Gaseous Diffusion Plant ("Plant"). In 2003, Plaintiff, who had previously worked as a Kentucky State Trooper for several years, became a USEC employee and began working in the Plant's protective force. *See, e.g.*, [DN 11-2]. USEC's operations of the Plant ceased in 2014, at which time Plaintiff and other USEC employees were laid off. [DN 11-1, p. 9]. Plaintiff was able to continue working at the Plant, however, as a security escort for its workers, but he was

eventually laid off again. *Id.* at 12–13. In 2016, he applied with another contractor to rejoin the Plant's protective force, but he was not hired. *Id.* at 14. That same year, he began working as a bailiff and prisoner transporter for the McCracken County Sheriff's Office. *See, e.g.*, *id.* at 15. In 2017 and 2018, Plaintiff applied to work as a Security Police Officer ("SPO") with Four Rivers, as discussed in more detail below. *See, e.g.*, *id.* at 18. He was not hired by Four Rivers and continued working for the Sheriff's Office. *Id.* In 2018, Plaintiff retired from the Sheriff's Office. *Id.* at 16.

### B. Four Rivers and Its Hiring Process

The Department of Energy ("DOE") is presently responsible for the Plant's remediation operations. *See* [DN 11, p. 2]. Four Rivers is a federal contractor and provides services to the DOE. *See id.* For example, it provides a protective force to guard the Plant, much like USEC did prior to 2014. [DN 11-3, p. 4]. However, the minimum qualifications required by the DOE are different than they were under USEC. *Id.* at 4, 12, 24. For example, an SPO must obtain DOE's Basic Security Police Officer Training ("Basic Training"). *See, e.g.*, *id.* at 12. Because Basic Training takes approximately ten weeks to complete, Four Rivers prefers to hire applicants who have already completed the training. *See generally id* at 12. Four Rivers also prefers to hire applicants with military police experience because those job responsibilities overlap with those of a SPO. *Id.* at 7.

DOE also requires Four Rivers to follow certain hiring preferences. *See* [DN 11-3, p. 6; DN 11-7]. This includes five levels of "H-Clause" status. [DN 11-7]. The highest H-Clause tier is reserved for current Four Rivers employees. *Id.* The second tier includes employees with "recall rights" per any "seniority list" contained with "any applicable" collective bargaining agreement. *Id.* The third tier falls to "displaced" employees, or those from the Plant or another

DOE nuclear facility. *Id.* The fourth tier includes employees who were "involuntarily separated" from their prior employment with the Plant. *Id.* Lastly, the fifth (and lowest) tier is for other employees who have previously worked for the Plant. *Id.* When considering SPO applicants who are otherwise qualified for the position, Four Rivers prefers to hire applicants that fall within the highest H-Clause tier. *Id.*; [DN 11-3, p. 8]. Within that tier, Four Rivers prefers to hire those with DOE protective force experience (including the Basic Training certification) and those with military police experience. [DN 11-3, p. 8].

### C. The 2017 Job Opening

On December 4, 2017, Four Rivers posted an opening for a SPO position. [DN 11-4]. Applicants that met the position's basic requirements were invited to interview. [DN 11-3, p. 6; DN 11-6, p. 4]. A total of five applicants, including Plaintiff, met those basic requirements and received an interview. [DN 13-2]. Four of those applicants, including Plaintiff, fell into the fourth H-Clause tier as employees who were "involuntarily separated" from their prior employment with the Plant.

The interviews were conducted by three-person panels that included Christopher Martin (Four Rivers' protective force manager), Michael Turner (Four Rivers' protective force captain), and a Human Resources representative. [DN 11-3, p. 6; 11-6, p. 4]. During the interviews, the panelists asked questions and took notes on the applicant's answers, then scored and ranked the applicants. [DN 11-3, pp. 6–7]. The scoresheets allowed the panelists to organize their thoughts and impressions before passing their comments and scores to the Hiring Manager, who made the ultimate hiring decision. *Id.* at 7.

Plaintiff believed that his interview went well. [DN 11-1, pp. 28–29]. However, when asked about his weaknesses, he responded, "Not my age," at which point the panelists had to

explain that his age was not a factor in the hiring process. [DN 11-3, p. 15]. Further, while Plaintiff had active shooter training, he did not have the Basic Training certification or military police experience that Four Rivers preferred. Ultimately, Plaintiff received the third highest interview score of the five interviewed applicants. [DN 13-5]. The interviewee with the highest score, Charles Schreck, did not have a high enough H-Clause status and was not offered the job. [DN 11-3, p. 11]. The second highest scoring interviewee, Anthony Childers, had prior military police experience and was offered the job. *See* [DN 13-5; DN 13-1; DN 13-4].

### D. The 2018 Job Openings

In April 2018, Four Rivers posted two open SPO positions. [DN 11-17]. Plaintiff applied and was invited to interview. The same panel presided over the interviews, and Plaintiff ultimately ranked eight out of twenty-six applicants. [DN 13-5]. Four Rivers extended offers to two applicants, Jerry Gore and J.D. Pullen. *See, e.g.*, [DN 11-22]. Both of these applicants held the same H-Clause status as Plaintiff, but both scored higher in their interviews. [DN 13-5].

Jerry Gore was not hired for the position, however, because he did not meet Four Rivers' medical requirements. [DN 11-3, p. 22]. As a result, Four Rivers reposted that SPO position, and Plaintiff resubmitted his application materials. He was again invited to interview with Martin, Turner, and a Human Resources representative. During this interview, Plaintiff discussed his active shooter training as part of his work with the Sheriff's Office. [DN 11-6, p. 10]. Plaintiff again thought that his interview went well, but he was not hired for the job. [DN 11-1, p. 39]. Four Rivers instead hired Cabot Grogan, who held the same H-Clause status as Plaintiff but scored higher in his interview. [DN 13-5].

Plaintiff testified that he was contacted by a Human Resources representative, who explained that he had not been selected for the SPO position. He claims that he asked, "Did my

age have a factor in this?" at which point the Human Resources representative hung up the phone.

### E.  The Present Lawsuit

In September 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). [DN 1-1]. He alleged that Four Rivers had discriminated against him by refusing to hire him due to his age. *Id.* By letter dated January 8, 2020, the EEOC explained that, after its investigation, it found that there existed reasonable cause to believe that Four Rivers discriminated against Plaintiff based on his age, in violation of the Age Discrimination in Employment Act ("ADEA"). [DN 1-2]. Soon after, Plaintiff received a Notice of Right to Sue, explaining that the EEOC declined to bring suit against Four Rivers but Plaintiff could sue on his own behalf. [DN 1-3]. On April 28, 2020, Plaintiff initiated this lawsuit against Four Rivers. [DN 1]. He alleges age discrimination in violation of the ADEA and the Kentucky Civil Rights Act ("KCRA").

Discovery has since been completed, and Four Rivers now moves for summary judgment. [DN 11]. Plaintiff has responded in opposition, [DN 15], and Four Rivers has replied, [DN 32]. The matter is now fully briefed and ripe for review.

## II.   LEGAL STANDARD

To grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

In reviewing a motion for summary judgment, the Court must review the evidence in the light most favorable to the non-moving party; however, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed.R.Civ.P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Ultimately, if the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, then there is no genuine issue of material fact and summary judgment is appropriate. *Matsushita Elec.*, 475 U.S. at 587 (citation omitted).

## III.   ANALYSIS

### A.  Framework for Plaintiff's Claims

Under the ADEA, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 20 U.S.C. § 623. Similarly, the KCRA prohibits an employer from "fail[ing] or refus[ing] to hire . . . or otherwise [] discriminat[ing] against an individual with respect to compensation, terms,

conditions, or privileges of employment, because of the individual's . . . age forty (40) and over."
KRS § 344.040(1)(a). "Claims brought under the KCRA are 'analyzed in the same manner' as
ADEA claims." *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008) (quoting
*Williams v. Tyco Elec. Corp.*, 161 F. App'x 526, 531 n.3 (6th Cir.2006)).

To prove a case of discrimination under either statute, the plaintiff can rely on one of two
theories. Under a disparate impact theory, the plaintiff must show that a "facially neutral
employment practice [has] a significant discriminatory impact on a protected group of which
plaintiff is a member." *Mineo v. Transp. Mgmt. of Tennessee, Inc.*, 694 F.Supp. 417, 427 (M.D.
Tenn. 1988). Under the disparate treatment theory, the plaintiff must prove that he has been
treated less favorably than others because he is a member of a protected class. *See, e.g.*, *id.* at
425. Under this latter theory, the plaintiff must present proof of the employer's discriminatory
motive. *Id.* (citations omitted).

In the present case, Plaintiff raises a disparate treatment theory. More specifically, he
alleges that Four Rivers refused to hire him because of his age. To prevail on this theory, he must
prove by a preponderance of the evidence that age was the "but for" cause of Four Rivers'
decision not to hire him. *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 323 (6th Cir. 2021)
(quoting *Gross v. FBL Fin. Servs, Inc.*, 557 U.S. 167, 177–78 (2009)). As Plaintiff acknowledges
in his brief, this "but for" standard is "not a low bar." [DN 15, p. 11]; *see also Pelcha*, 988 F.3d
at 323 ("Meeting this 'because of' requirement is no simple task."). To satisfy it, Plaintiff must
show "that age was *the* determinative reason [he was] terminated." *Pelcha*, 988 F. 3d at 324
(quoting *Scheick v. Tecumseh Public Schools*, 766 F.3d 523, 529 (6th Cir. 2014)). In other
words, he must prove "that age '*had a determinative influence on the outcome*' of [Four Rivers']
decision-making process." *Id.* (quoting *Gross*, 557 U.S. at 176).

In proving these things, Plaintiff can rely on direct or circumstantial evidence. *Scheick*, 766 F.3d at 529. In the context of an ADEA discrimination claim, the Sixth Circuit has defined direct evidence as "evidence that proves the existence of a fact without requiring any inferences." *Id.* at 530 (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)). For example, an employer's comment that an employee should retire because "they just want somebody younger" is direct evidence of age discrimination. *Id.* at 531. Plaintiff does not point to any such evidence in this case and instead relies on circumstantial evidence— i.e., evidence requiring "the factfinder to draw inferences from the evidence presented to conclude that the plaintiff was terminated based on age." *Pelcha*, 988 F.3d at 324 (citation omitted). As a result, his claim is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See id*; *Plumb v. Potter*, 212 F. App'x 472, 478 (6th Cir. 2007); *Aday v. Westfield Ins. Co.*, No. 21-3115, 2022 WL 203327, *4 (Jan. 24, 2022) (citations omitted).

Under *McDonnell Douglas*, Plaintiff must first establish a prima facie case of discrimination. *See, e.g.*, *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003) (citation omitted). To do so, he must prove that (1) he is a member of a protected class; (2) he was subject to an adverse employment decision; (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class or similarly-situated employees were treated more favorably. *Pelcha*, 988 F.3d at 326 (citation omitted); *Grosjean*, 349 F.3d at 335. In an age discrimination case like this one, "the protected class includes all workers at least 40 years old and the fourth element is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person." *Grosjean*, 349 F.3d at 335 (citations omitted). If Plaintiff establishes his prima facie case, the burden shifts to

Four Rivers to articulate a legitimate nondiscriminatory reason for deciding not to hire Plaintiff. *Id.* (citation omitted). Once Four Rivers articulates such a reason, the burden shifts back to Plaintiff to prove that Four Rivers' stated reason was merely pretextual and its decision was actually motivated by age-based prejudice. *Id.* (citation omitted).

Notably, "[a]lthough intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). The "ultimate inquiry" is whether the evidence is "sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." *Pelcha*, 988 F.3d 325 (quoting *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990)).

In its Motion for Summary Judgment, Four Rivers first argues that Plaintiff cannot establish a prima facie case of discrimination because the applicants that were selected for the SPO positions were not "similarly situated" to Plaintiff. [DN 11, pp. 11–12]. Four Rivers next argues that, even if Plaintiff can establish a prima facie case, it has articulated a legitimate and nondiscriminatory reason for declining to hire Plaintiff. *Id.* at 12–13. The burden then shifts to Plaintiff to show that Four Rivers' purportedly legitimate and nondiscriminatory reason was actually a pretext for discrimination, and Four Rivers argues that Plaintiff cannot prove such pretext. *Id.* at 13–14.

In response, Plaintiff argues that "[t]he Court should deny Defendant's Motion for Summary Judgment because Mr. Mick was the best qualified candidate." [DN 15, p. 11]. Because he was "admittedly qualified for the positions he sought but was passed over for

significantly younger individuals," Plaintiff argues, he has satisfied his burden of establishing a prima facie case of discrimination. *Id.* at 12; *see also id.* at 12–16. Plaintiff also argues that Four Rivers' legitimate nondiscriminatory reason for its hiring decisions is not supported by the deposition testimony of the interview panelists. *Id.* at 16. Lastly, Plaintiff argues that Four Rivers' nondiscriminatory explanation for declining to hire him was merely pretextual. *Id.* at 18–23.

The Court considers each of these issues in turn.

### B.  Plaintiff's Prima Facie Case

As explained above, Plaintiff must establish a prima facie case of discrimination by proving that (1) he is a member of a protected class; (2) he was subject to an adverse employment decision, namely, that he applied for and did not receive the jobs at issue; (3) he was qualified for those positions; and (4) similarly situated persons not in his class received the job for which he applied. *Pelcha*, 988 F.3d at 326 (citation omitted); *Grosjean*, 349 F.3d at 335. Plaintiff must prove all four elements. *Overall v. RadioShack Corp.*, 202 F. App'x 865, 868 (6th Cir. 2006). However, this "light burden" is "'easily met' and 'not onerous.'" *Pelcha*, 988 F.3d at 326 (quoting *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020)) (internal quotation marks omitted).

In this case, Four Rivers does not dispute that Plaintiff, who was approximately sixty-one[1] years old at the time of his applications, is a member of a protected class due to his age, nor does Four Rivers dispute that Plaintiff applied for but was not hired for the SPO positions or that he met the basic qualifications for these positions. Instead, Four Rivers points to the fourth element of Plaintiff's prima facie case. Four Rivers argues that Plaintiff cannot prove that the

---

[1] Plaintiff was born in 1956. *See* [DN 1-1].

SPO jobs were offered to "similarly situated persons not in his class" because the three candidates that were hired possessed "heightened qualifications." [DN 11, pp. 11–12].

However, in an age discrimination case, "the protected class includes all workers at least 40 years old," and the plaintiff is not required to show that a person outside the protected class was chosen over him; rather, he must show that a "significantly younger person" was selected for the position. *Grosjean*, 349 F.3d at 335 (citations omitted). Stated another way, "the prima facie case requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion," and this "inference cannot be drawn from the replacement of one worker with another worker insignificantly younger." *Id.* at 336 (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)). On this point, the Sixth Circuit has noted that "[a]ge difference of ten or more years have generally been held to be sufficiently substantial to meet" the fourth element of a prima facie age discrimination case. *Id.* at 336–38 (citations omitted). Even in cases involving an age gap of less than ten years, "the plaintiff still may present a trial claim if [he] directs the court to evidence that her employer considered [his] age to be significant." *Id.* at 339 (quoting *Hartley v. Wisc. Bell*, 124 F.3d 887, 893 (7th Cir. 1997)). Having considered these general principles and the rulings of other circuits, the Sixth Circuit has held that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years of less between an employee and a replacement is not significant." *Id.* at 340.

The question then becomes, what is the age difference between Plaintiff and the applicants who were hired for the SPO positions? At the time of his 2017 and 2018 applications, Plaintiff was approximately sixty-one years old. Today, he is approximately sixty-five years old. Defendant does not provide the exact ages of the hired applicants, and Plaintiff states that he

11

does not possess that information, as neither their ages nor birthdates were listed in the discovery materials. [DN 15, p. 15]. However, by looking at the applicant's resumes and high school graduation years, Plaintiff estimates that Grogan is approximately forty-two years old, Gore (who was initially hired but did not meet the medical requirements) is approximately forty-four years old, Childers is approximately forty-six years old, and Pullen is approximately fifty-three years old. These men are therefore roughly twelve to twenty-three years younger than Plaintiff. Defendant does not dispute or clarify these ages or this age gap in its reply brief.

Viewing the undisputed evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff can provide sufficient evidence demonstrating an age gap of anywhere from twelve to twenty-three years. As noted above, an age gap of ten or more years is generally considered to be significant enough to satisfy the fourth element of a prima facie age discrimination case. *Grosjean*, 349 F.3d at 336–38. The Court therefore finds that the fourth element of Plaintiff's prima facie case is satisfied, and the other elements are not disputed by the parties. Accordingly, Plaintiff has met the "light burden" of proving a prima facie case of age discrimination. *Pelcha*, 988 F.3d at 326 (quoting *Willard*, 952 F.3d at 808) (internal quotation marks omitted).

### C.  Four Rivers' Legitimate Nondiscriminatory Reasoning

Because Plaintiff has proven his prima facie case of discrimination, the Court next considers whether Four Rivers can articulate a legitimate nondiscriminatory reason for declining to hire Plaintiff. *See Grosjean*, 349 F.3d at 335 (citations omitted). Four Rivers' stated reason for hiring other candidates for its SPO positions is that the chosen candidates were more qualified. [DN 11, p. 12]. The Sixth Circuit has explained that "[s]electing a more qualified candidate constitutes a legitimate, non-discriminatory reason." *Hawkins v. Memphis Light Gas and Water*,

520 F. App'x 316, 319 (6th Cir. 2013) (citations omitted). Four Rivers has therefore articulated a legitimate nondiscriminatory reason for hiring other applicants instead of Plaintiff.

In his response brief, Plaintiff argues that Four Rivers' has not offered a legitimate explanation for declining to hire him because Plaintiff was more qualified than the hired applicants. [DN 15, pp. 16–17]. He also takes issue with the lack of a standard scoring system for the interviews, arguing that they were "only about how much the interviewers liked each applicant's presentation." *Id.* at 16. However, the Court "will not second-guess a non-discriminatory reason 'even if the [the employer's] hiring process was entirely subjective.'" *Aday*, 2022 WL 203327, at *5 (quoting *Browning v. Dep't of Army*, 436 F.3d 692, 698 (6th Cir. 2006)). Further, Plaintiff's argument is best characterized as an attempt to show pretext and is addressed below. *See generally Hawkins*, 520 F. App'x at 319–20; *Reeves*, 530 U.S. at 143 (explaining that the plaintiff can show pretext "by showing that the employer's proffered explanation is unworthy of credence").

### D.  Plaintiff's Burden to Prove Pretext

Because Four Rivers has articulated a legitimate nondiscriminatory reason for declining to hire Plaintiff, the burden shifts back to Plaintiff to prove by a preponderance of the evidence that Four Rivers' stated reason was merely a pretext for discrimination. *See Grosjean*, 349 F.3d at 335 (citations omitted). Plaintiff can demonstrate pretext if "the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Hawkins*, 520 F. App'x at 319 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2020)) (internal quotation marks omitted). Additionally, in a failure-to-hire case, "Plaintiff may prove pretext through the relative-

qualifications test." *Aday*, 2022 WL 203327, *5 (citing *Bender v. Hecht's Dep't Stores*, 455 F.3d

612, 627 (6th Cir. 2006)). Under the relative qualifications test, Plaintiff

> must present evidence demonstrating that either (1) he was the "plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former," or (2) he "was as qualified as if not better qualified" than [the hired applicants] and the record contains "other probative evidence of discrimination."

*Id.* (quoting *Bender*, 455 F.3d at 627).

Regardless of which method Plaintiff employs to show pretext, "he retains the ultimate

burden of producing 'sufficient evidence from which the jury could reasonably reject [the

defendant's] explanation and infer that the defendant [] intentionally discriminated against him.'"

*Hawkins*, 520 F. App'x at 319–20 (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir.

2003)). To survive summary judgment, he "need only proffer enough evidence from which a

reasonable jury could reject [Four Rivers'] articulated reasons." *Aday*, 2022 WL 203327, *5

(citing *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020)). In essence,

he must demonstrate that Four Rivers' "'business decision' was so lacking in merit as to call into

question its genuineness." *Bender*, 455 F.3d at 625 (quoting *Hartsel v. Keys*, 87 F.3d 795, 800

(6th Cir. 1996)) (internal quotation marks omitted).

In the present case, Plaintiff relies on the relative-qualifications test and argues (1) that he

was "plainly the most qualified candidate," [DN 15, p. 18], and (2) even if he was not the most

qualified candidate, he was equally as qualified as the other candidates and the record contains

evidence of age bias. *Id.* at 21–23. On this point, it is important to note that "employers are

generally 'free to choose among qualified candidates.'" *Id.* at 626 (quoting *Wrenn v. Gould*, 808

F.2d 493, 502 (6th Cir. 1987)). Furthermore, "[t]he law does not require employers to make

perfect decisions, nor forbid them from making decisions that others may disagree with." *Id.*

(quoting *Hartsel*, 87 F.3d at 801) (internal quotation marks omitted). Thus, "a rejected applicant 'must show that a reasonable jury could conclude that the actual reasons offered by the defendant were a mere pretext for unlawful age-discrimination, not that other reasonable decision-makers might have retained the plaintiff[]." *Id.* (quoting *Rowan*, 360 F.3d at 550).

The Sixth Circuit has provided additional guidance on the use of qualifications evidence (i.e., the relative-qualifications test) to determine pretext:

> Whether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination. In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified or better qualified that the successful applicant, might well result in the plaintiff's claims surviving summary judgment.

*Id.* at 626–27 (citation omitted). However, if there "is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Id.* at 627. Stated another way, "evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual." *Id.* Thus, "when qualifications evidence is all (or nearly all) that a plaintiff proffers to show pretext, the evidence must be of sufficient significance itself to call into question the honesty of the employer's explanation." *Id.* "A laxer standard would move this court from its proper role of preventing unlawful employment practices to the illegitimate role of acting as a 'super personnel department,' overseeing and second guessing employers' business decisions." *Id.* (quoting *Verniero v. Air Force Acad. Sch. Dist. No. 20*, 705 F.2d 388, 390 (10th Cir. 1983)).

With these principles in mind, the Court first considers whether Plaintiff's qualifications were "so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Id.* at 627. Plaintiff first argues that he "was plainly the most qualified candidate for each round of interviews" because he met the minimum requirements for the SPO positions, he had Q-level DOE security clearance, and "he believed he had the [Basic Training] certification from" his time as a USEC security officer, and even if he did not, neither did the other applicants. [DN 15, p. 19]. With respect to these credentials, the Court notes that all interviewees met the minimum requirements for the SPO positions, *see, e.g.*, [DN 11-3, p. 6], and there is no evidence that Plaintiff or any of the hired applicants possessed the required Basic Training certification. Thus, of the credentials just listed, the only one that might set Plaintiff apart from the other applicants was his security clearance level. However, the record demonstrates that Childers, Grogan, and Gore possessed the same, similar, or higher DOE security clearances. *See* [DN 13-4; DN 13-6]. Further, Plaintiff does not explain how his Q-level DOE security clearance makes him a better qualified candidate for the SPO positions.

Next, Plaintiff argues that he was entitled to a higher H-Clause status than Childers and Pullen. He states that he "had displaced federal worker status over Mr. Childers," so he was "entitled to preference over Mr. Childers." [DN 15, p. 20]. He also argues that he had seniority over Pullen. *Id.* The Court notes that both of these arguments are undeveloped, and neither are supported by the evidence of record. For example, Plaintiff argues that he was a "displaced federal worker"—i.e., a laid off worker—and was therefore a third tier H-Clause applicant, while Childers voluntarily quit his prior job at the Plant, making him a fourth tier H-Clause applicant. [DN 15, pp. 19–20]. However, he cites to no evidence to support this statement. With respect to

his argument that he had "seniority" over Pullen, allegedly through a collective bargaining agreement, he does not provide any evidence of such an agreement. As Martin explained in his deposition, any collective bargaining agreement in place between USEC and the Plant became null and void once USEC left the Plaint in 2014. [DN 11-3, p. 9]. Because the evidence of record indicates that Plaintiff and the hired applicants were all of equal H-Clause status, the question is whether Plaintiff was significantly more qualified than the hired applicants.

Plaintiff argues that he was a more qualified candidate than Childers and Pullen because Childers left USEC to become a locksmith and Pullen left USEC to become a nurse, and he had more years of experience in a law enforcement management role than Grogan. [DN 15, p. 20]. Lastly, he notes that he was the only applicant that mentioned completing active shooter training, which was a focus point of the Protective Force's operations. *Id.* However, Plaintiff overlooks the credentials, experience, and training of the other applicants. For example, Childers had prior military police experience, which Four Rivers preferred because the day-to-day operations of a military police officer are similar to the day-to-day operations of an SPO. [DN 13-4; DN 11-3, p. 7]. He had also completed lockmaster training and certification and was in the process of completing cyber security training. [DN 13-1]. His interviewers noted that this "added to [his] knowledge of security as a whole." *Id.* Pullen also had prior military experience and roughly eleven years of experience as member of the Plant's protective force. [DN 13-7]. Grogan and Gore also had prior experience in law enforcement and as SPOs. [DN 13-6; DN 17].

Having compared Plaintiff's qualifications with those of the selected applicants, the Court finds that a reasonable decisionmaker could plausibly select Plaintiff over the other applicants. Even though Childers had the preferred military police experience and all applicants had some SPO and/or law enforcement experience, Plaintiff has a considerable background in

law enforcement and had completed some active shooter training. However, another reasonable decisionmaker could also make a plausible case that the selected applicants were the better candidates for the SPO positions. Importantly, Childers had military police experience, something expressly preferred by Four Rivers because the requirements and day-to-day duties of a military police officer are similar to requirements and day-to-day duties of an SPO. Pullen also had prior military experience, and Grogan and Gore had prior experience in law enforcement. As Martin explained, all law enforcement officers have received some level of active shooter training. [DN 11-3, p. 17]. Further, each of the hired applicants performed more favorably in their interviews than Plaintiff. "If two reasonable decisionmakers could consider the candidates' qualifications and arrive at opposite conclusions as to who is more qualified, then clearly one candidate's qualifications are not *significantly* better than the other's." *Bender*, 455 F.3d at 628 (emphasis added). The Court therefore finds that Plaintiff's qualification evidence alone is insufficient to establish pretext.

However, as noted above, a plaintiff's age discrimination claim may survive summary judgment even if he was only as qualified or marginally better qualified than the successful applicants, so long as he provides other probative evidence of discrimination. *Id.* at 626–27 (citation omitted). For example, "age-based slurs may well betray a bias that older workers are less valuable or competent." *Rowan*, 360 F.3d at 550. In *Willard v. Huntington Ford, Inc.*, for instance, the Sixth Circuit found evidence of pretext when a decisionmaker told the plaintiff that he was "old and fat," "over-the-hill," and referred to him as a "dinosaur" and "grandpa." 952 F.3d at 813. However, even these types of "age-based slurs" do not necessarily constitute direct evidence of age discrimination. *See, e.g.*, *Rowan*, 360 F.3d at 550 (explaining that the statements at issue were not made in relation to the plaintiff's discharge, nor were they made by a decision-

18

maker). Comments made several months prior to the adverse employment action, which were unrelated to that action or were directed toward another employee, or were not made by a decision maker, may not be sufficient to demonstrate age discrimination. *See, e.g.*, *Pelcha*, 988 F.3d at 327.

In this case, Plaintiff points to a comment by one of the interview panelists, Martin. In his deposition, Martin expressed a "personal preference . . . for people who can accept—readily accept change." [DN 11-3, p. 23]. Plaintiff acknowledges that this statement, by itself "might seem innocuous," [DN 15, p. 22], but he argues that this statement, combined with Martin's written comments during the interview, "reflect[s] the pretextual nature of Mr. Martin's [interview] ratings." *Id.* Specifically, he points to Martin's note stating, "not my age???" *Id.* Martin testified that this note was written in response to the standard interview question about an applicant's strengths and weaknesses. [DN 11-3, p. 15]. In response to the question "what are your weaknesses," Plaintiff allegedly stated, "not my age." *Id.* Apparently, the interviewers felt this was an odd answer and Martin explained that age was not a factor. *Id.*

In his response brief, Plaintiff denies making the "not my age" comment, stating that he "would not have discussed his age as a weakness." [DN 25, p. 22]. The Court finds this explanation unavailing, however, as no one has alleged that Plaintiff stated his age *was* a weakness; rather, the evidence of record indicates that he stated that his age was *not* a weakness. In fact, in his deposition, Plaintiff stated, "I don't think I would say that," though he could not say for certain that he did not provide that answer. [DN 15-1, p. 15]. He then acknowledged, "I might say, 'No, [my age is] not a weakness.'" *Id.* The evidence of record therefore indicates that Plaintiff likely answered, "not my age," or some variant thereof, in response to the standard interview question asking him to identify his weaknesses.

Regardless, even viewing the evidence in the light most favorable to Plaintiff, the Court finds that Martin's comments, without more, are insufficient to establish pretext. First, his statement about preferring applicants who can "readily accept change" was not directed at Plaintiff. Rather, Martin was explaining in his deposition what attributes he personally preferred in a candidate, after considering their H-Clause status and prior experience. [DN 11-3, p. 23]. He explained that he preferred candidates who can readily accept change because "[w]e're in a constant flux of change with these contract flips." *Id.* He also preferred applicants that "work well with the rest of the group and can make sure they're following the procedures that are identified in the job." *Id.* at 23–24. These were general comments about his personal preferences and were not directly pointed at Plaintiff or his interviews.

Furthermore, a preference for an employee who "readily accepts change" is not "unambiguously ageist." *See Pelcha*, 988 F.3d at 327 (citation omitted). The comment itself does not refer to age, unlike comments that refer to an employee as "grandpa," "dinosaur," or "little old lady." *Id.* (citations omitted). Instead, Martin's comment simply refers to an employee's ability to adapt to the company's "contract flips," and there is no evidence whatsoever to tie the comment to an applicant's age, or even to any specific hiring decision. "[A]llowing such comments to create a jury question would essentially mean that any potentially ageist comments, about any employee, at any time, so long as made by the same person who made the decision at issue[2] would suffice to get past summary judgment. . . . That is not reasonable." *Id.* (quoting and agreeing with the district court's analysis).

---

[2] It is not clear that Martin was the ultimate decision maker for any of the three SPO positions at issue. The ultimate hiring decision was made the by the Hiring Manager, after reviewing the interview panel's notes. [DN 11-3, p. 7]. Martin testified that he may have been the Hiring Manager for one of the SPO positions at issue, but he was not sure. *Id.* Regardless, even assuming Martin was a decision-maker, the Court finds that his comments do not establish pretext, for the reasons set forth above.

Martin's interview note ("not my age???") is also insufficient to establish pretext. While this comment *was* directly connected to Plaintiff's interview, it appears to be Plaintiff's own answer to the standard interview question, "What are your biggest weaknesses?" [DN 11-3, p. 15]. Martin explained that he wrote that answer in his notes, followed by three question marks, because he did not understand why Plaintiff had answered in that manner. *Id.* In response to that answer, Martin explained to Plaintiff that age was not a factor in the hiring decision. *Id.* Martin also discussed Plaintiff's answer with the other interview panelists after the interview, and they "were all kind of trying to figure out why" he had answered in that way. *Id.* Plaintiff's own answer to the interview question about weaknesses, without more, is insufficient to establish pretext. Further, even if the Court believes Plaintiff's assertion that he would not have provided that answer, the note "not my age???" does not provide any indication that Plaintiff's age in any way affected the hiring decision. In other words, it is not unambiguously ageist, and that note alone does not create a genuine issue of fact with respect to pretext.

In sum, Plaintiff has failed to produce sufficient evidence that he was significantly better qualified than the hired applicants, and he has not produced sufficient evidence of age discrimination, even assuming he was as qualified or marginally better qualified than the hired applicants. Stated another way, no reasonable jury could conclude that Four Rivers' proffered reason for declining to hire Plaintiff was a mere pretext for unlawful age discrimination. The Court will therefore grant Four Rivers' Motion for Summary Judgment, [DN 11].

## IV.    CONLUSION

For the reasons set forth above, **IT IS ORDERED** that Four Rivers' Motion for Summary Judgment, [**DN 11**], is **GRANTED**. A separate judgment will follow.

**Thomas B. Russell, Senior Judge**
**United States District Court**

February 28, 2022

cc: Counsel of Record